IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DANIEL MOORE, | CASE NO. 1:21-cv-1450 |
| Petitioner, | DISTRICT JUDGE BENITA Y. PEARSON |
| vs. | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| WARDEN DOUGLAS A. FENDER, | |
| Respondent. | **REPORT & RECOMMENDATION** |

Pro se Petitioner Daniel Moore filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Moore is in custody at the Lake Erie Correctional Institution due to a journal entry of sentence in the case *State v. Moore*, Richland County Court of Common Pleas, Case No. 2019 CR 0516. This matter has been referred to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be denied.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Fifth Appellate District summarized the facts underlying Moore's conviction as follows:

> {¶2} On July 29, 2019, Appellant was indicted on Counts 1 and 3, Rape (when the other person's ability to resist or consent is substantially impaired because of a mental condition and the offender knows, or has reasonable cause to believe, that the other person's ability to resist or consent is substantially impaired because of a mental condition), in violation of R.C. 2907.02(A)(1)(c), both felonies of the first degree. In addition, Appellant was indicted on Counts 2 and 4, Rape (when a defendant engages in sexual conduct with another and purposely compels another person to submit by force or threat of force), in violation of R.C. 2907.02(A)(2), both felonies of the first degree. These charges stemmed from the sexual conduct engaged in by Appellant with a mentally impaired sixteen-year-old female who is his niece, E.M.

> {¶3} On March 3, 2020, the matter proceeded to a jury trial.

> {¶4} At trial, M.H., mother of E.M. testified that on April 5, 2019, she dropped E.M. off at F.M.'s house for the weekend. F.M. is the aunt of E.M. M.H. received a call that her daughter had been raped by Appellant. After speaking with E.M., M.H. went to F.M.'s house. M.H. discovered E.M. was not at F.M.'s house but at Appellant's house. M.H. then testified she and F.M. were on the phone with Appellant yelling at him, asking why he raped E.M. She stated Appellant denied raping E.M. When E.M. came back to F.M.'s house, M.H. observed that E.M. was scared, upset, sad, and crying. E.M.'s clothing was askew and her pants were sagging, which was unusual for E.M.

> {¶5} M.H. further testified when E.M. was three months old, she had double bronchial pneumonia, which delayed her mental development. E.M. has undertook occupational therapy to refine her motor

2

skills, physical therapy when she was young to help her walk, and is currently in speech therapy. M.H. discussed E.M.'s Individual Education Plan (IEP) at school. As part of her educational plan an Evaluation Team Report is completed every three or four years. The most recent report took place in 2017. As part of the evaluation an IQ test was administered where E.M. scored a forty-six; 100 is the average score for the test. As part of E.M.'s IEP, a special needs teacher attends classes with her at all times.

{¶6} Next, Appellee called E.M. to testify. E.M. testified that Appellant is her uncle. E.M. said that Appellant went to F.M.'s house and asked E.M. to help him clean out his garage. After E.M. had helped clean the garage, she testified Appellant shut the garage door and put a table in front of the door so E.M. could not leave. E.M. did not understand what was happening. Next, Appellant unzipped E.M.'s jacket and started kissing her. He pulled her pants and leggings down. E.M. then testified Appellant inserted his penis into her rectum and inserted two fingers into her vagina. E.M. further testified, Appellant whispered to her, "That pussy is mine." Tr. at 410. Appellant then threatened E.M. that if he saw her again, he would continue to do this to her.

{¶7} E.M. said while this was happening, her friend, Dillen Richards, had attempted to call her four times, but Appellant would not let her answer. E.M. texted Dillen asking for his help. E.M. said, "I was locked in there, and he raped me. And I didn't know what to do." Tr. at 413–14. E.M. explained that she did not try to push him away because, "he was getting mad at me." Tr. at 416. She believed that if she fought by pushing him away or kicking him, that she would be in trouble. E.M. testified her cousin took her back to her aunt's house. After the police interviewed E.M., she went to the hospital.

{¶8} Dr. Anthony Midkiff performed the initial medical screening on E.M. when she arrived at the hospital. Andrea Storm, a Sexual Assault Nurse

3

Educator (S.A.N.E.), treated E.M. at the hospital. Storm identified a visible anal tear, and blunt force trauma to E.M.'s cervix also evidenced by a tear.

{¶9} Dawn Frybeck, an expert in DNA analysis, testified that the anal swabs indicated the presence of a partial male DNA profile. Frybeck performed a Y-STR testing which targets the male chromosomes. This testing looks at twenty-three different markers within the same chromosome. Since the Y chromosome is passed from father to son, a father and son are expected to have the same Y-STR DNA profile. In this case, Frybeck retrieved information from seven of the twenty-three markers, and the information did match Appellant. Each male in Appellant's lineage would be expected to have this DNA profile; however, Frybeck testified the odds of a random person outside of the lineage having the same DNA profile would be one in every four hundred, thirty-five individuals.

{¶10} The trial court gave a special jury instruction only for Counts Two and Four as it pertains to the definition of force.

> "Force" means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing. When the relationship between the victim and the defendant is one of child and authority figure, the element of force need not be openly displayed or physically brutal. It can be subtle, slight, psychologically and emotionally powerful. Evidence of an expressed threat of harm or evidence of significant physical restraint is not required. If you find beyond a reasonable doubt that under the circumstances in evidence E.M.'s will was overcome by fear, duress, or

4

> intimidation, the element of force has
> been proved.
>
> {¶11} Tr. 883–885, 907–898.
>
> {¶12} On March 10, 2020, a jury convicted Appellant
> on all four counts. For the purposes of sentencing,
> Count Two and Count Four merged into Count One
> and Count Three, respectively. On Counts One and
> Three, Appellant was sentenced to eleven years,
> with both sentences to be served consecutively.
> Appellant was sentenced to an aggregate minimum
> term of twenty-two years to a maximum term of
> twenty-seven and a half years in prison.

*State v. Moore*, No. 2020 CA 0038, 2021 WL 352018, at *1–2 (Ohio Ct. App. Jan. 29, 2021).

### Procedural background

#### 1.  *Trial court proceedings*

In July 2019, a Richland County Grand Jury issued an indictment charging Moore with four counts of rape against Moore's mentally impaired sixteen-year-old niece. Doc. 5-1, at 3–4 (Exhibit 1). Moore, through counsel, pleaded not guilty; the case proceeded to a jury trial; and the jury found Moore guilty as charged. *Id.* at 5 (Exhibit 2). In March 2020, the trial court merged the four rape counts into two. *Id.* at 6. The court sentenced Moore to 11 to 16.5 years on one count and 11 years on the other count, to run consecutively, for a total of 22 to 27.5 years in prison. *Id.*

#### 2.  *Direct appeal*

Moore appealed to the Ohio court of appeals. Doc. 5-1, at 9 (Exhibit 3). In his brief, he raised the following assignments of error:

> 1. The trial court erred by providing the jury with a jury instruction about authority figures applying psychological force for purposes of rape pursuant to *State v. Eskridge*.
>
> 2. Appellant's rape convictions are not supported by the weight of the evidence.

*Id*. at 11 (Exhibit 4). In January 2021, the Ohio court of appeals affirmed the trial court's judgment. *Id*. at 55–58 (Exhibit 6).

In March 2021, Moore, pro se, appealed to the Ohio Supreme Court. Doc. 5-1, at 59 (Exhibit 7). In his memorandum in support of jurisdiction, Moore set forth the following propositions of law:

> I.  Due process of law and its equal protections under the Fourteenth Amendment to the United States Constitution prohibits a trial court from abusing its discretion by providing a jury with instruction regarding the authority figures applying psychological force for purposes of rape.
>
> II. Due process of law and its equal protections under the Fourteenth Amendment to the United States Constitution prohibits a trial court from convictions of rape that are not supported by the weight of the evidence.

Doc. 5-1, at 63 (Exhibit 8). In May 2021, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Moore's appeal. *Id*. at 100 (Exhibit 10).

3.      *Federal habeas corpus petition*

In July 2021, Moore filed a federal habeas corpus petition under 28 U.S.C. § 2254. Doc. 1. Construing Moore's Petition liberally, he raised the following grounds for relief:[1]

> **Ground One**: The trial court erred by providing the jury with a jury instruction about authority figures applying psychological force for purposes of rape pursuant to *State v. Eskridge*.
>
> Due process of law and its equal protections under the Fourteenth Amendment to the United States Constitution prohibits a trial court from abusing its discretion by providing a jury with instruction regarding the authority figures applying psychological force for purposes of rape.
>
> *Supporting facts*: The trial court abused its discretion when instructing the jury that evidence of physical restraint is not required when the victim is a minor of sixteen[]years old, and the Defendant being the victim's alleged uncle, but they were not particularly close. This Instruction was not harmless, as it did in fact misle[a]d the jury in a matter materially affecting Defendant's substantial rights, because it did, beyond a reasonable doubt,

---

[1]      In his Petition, when asked to state Ground One, Moore writes, "See, attach sheets." Doc. 1, at 5. For Ground Two, Moore writes, "N/A." *Id*. at 7. In the extra pages Moore added to his Petition, Moore lists the two grounds for relief that he raised in the Ohio court of appeals and the two grounds for relief that he raised in the Ohio Supreme Court. *Id*. at 16–17. And he spends two pages describing "Facts supporting Grounds One and Two." *Id*. at 18. The Warden assumed that Moore's Petition raises the same claims that Moore presented on direct appeal to the Ohio court of appeals and the Ohio Supreme Court. Doc. 5, at 6. Construing Moore's Petition liberally, I do the same. *See Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001) ("[B]ecause petitioner has filed a pro se petition and appeal, his pleadings are held to a less stringent standard than those prepared by an attorney") (citing *Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972)).

contribute to the verdict, rendering the trial fundamentally unfair. In addition, … the jury's verdict is against the manifest weight of the evidence and not supported by sufficient evidence.

**Ground Two**: Appellant's rape convictions are not supported by the weight of the evidence.

Due process of law and its equal protections under the Fourteenth Amendment to the United States Constitution prohibits a trial court from convictions of rape that are not supported by the weight of the evidence.

*Supporting facts*: there was no evidence of overt force or threat of force that rendered the conviction against the manifest weight of the evidence, and is not supported by sufficient evidence, that resulted in a miscarriage of justice. The court of appeals decision was an unreasonable application of Federal Law and was contrary to clearly established Federal law under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Doc. 1, at 16–17. The Warden filed a Return of Writ, Doc. 5, and Moore filed a Traverse, Doc. 6.

### Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001).

8

Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

1. *Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must

9

present the claims to the state courts as federal constitutional issues and not just as issues arising under state law. *See, e.g., Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).

    2.    *Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

10

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

3.    *Merits review*

To obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

Under the *contrary to* clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the *unreasonable application* clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, and legal principles and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted *contrary to*, or *unreasonably applied*, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in

12

which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an *unreasonable application* of law, the court uses an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

For convenience, I discuss Moore's grounds in reverse order.

2.      *Ground Two fails on the merits*

In Ground Two, Moore argues that his rape convictions "are not supported by the weight of the evidence." Doc. 1, at 16–17. The Warden argues that Ground Two is not cognizable because, while a sufficiency of the evidence claim is cognizable on federal habeas review, a manifest weight of the evidence claim is not. Doc. 5, at 13. And, the Warden submits, Ground Two is also

procedurally defaulted because Moore "never … presented to the state courts as a federal constitutional issue" a sufficiency of the evidence claim. *Id*. at 14.

In the *supporting facts* section of his Petition, Moore describes Ground Two as a manifest weight of the evidence claim and a sufficiency of the evidence claim. *Id*. at 19. Moore also states that he argued to the Ohio court of appeals that his convictions were against the manifest weight of the evidence and "not supported by sufficient evidence." *Id*. A review of Moore's state court briefs shows that Moore argued to the Ohio court of appeals and the Ohio Supreme Court that his convictions were (1) against the manifest weight of the evidence and (2) not supported by sufficient evidence under federal law. *See* Doc. 5-1, at 28–29 (referencing *Jackson v. Virginia*, 443 U.S. 307 (1979)), 69. Indeed, the Ohio court of appeals described Moore's claim as "the jury's guilty verdict is against the manifest weight of the evidence and not supported by sufficient evidence." *Moore*, 2021 WL 352018, at *4. Construing Moore's Petition liberally, Ground Two alleges a sufficiency of the evidence claim, which Moore presented to the Ohio courts. So, Ground Two is cognizable and not procedurally defaulted.

Nevertheless, Ground Two fails on the merits. The Ohio court of appeals considered this claim:

> {¶25} Sufficiency of evidence and manifest weight of the evidence are separate and distinct legal standards. *State v. Thompkins*, 78 Ohio St.3d 380. Essentially, sufficiency is a test of adequacy. *Id*. A sufficiency of the evidence standard requires the appellate court to examine the evidence admitted at

trial, in the light most favorable to the prosecution, to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259.

{¶26} As opposed to the sufficiency of evidence analysis, when reviewing a weight of the evidence argument, the appellate court reviews the entire record, weighing the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts of evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380.

{¶27} Under the weight of the evidence argument, the appellate court shall consider the same evidence as when analyzing the sufficiency of the evidence argument. Appellant argues the jury clearly lost its way as their conviction of Appellant based on the total weight of the evidence was a manifest miscarriage of justice.

{¶28} The State indicted Appellant on Count 1 and Count 3, Rape (when the other person's ability to resist or consent is substantially impaired because of a mental condition and the offender knows, or has reasonable cause to believe, that the other person's ability to resist or consent is substantially impaired because of a mental condition), in violation of R.C. 2907.02(A)(1)(c), and Count 2 and Count 4, Rape (when a defendant engages in sexual conduct with another and purposely compels another person to submit by force or threat of force), in violation of RC. 2907.02(A)(2).

{¶29} R.C. 2907.02(A) states:

> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living

15

separate and apart from the offender, when any of the following applies:

...

(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

{¶30} With respect to Count 1 and Count 3, Appellant argues E.M.'s ability to resist or consent was not substantially impaired because of her mental condition.

{¶31} Substantial impairment does not have to be proven through expert medical testimony. *State v. Hillock*, 7th Dist. Harrison No. 02-538-CA, 2002-Ohio-6897, citing *State v. Tate*, 8th Dist. No. 77462 (Oct. 26, 2000). In *Hillock*, the Seventh District Court of Appeals found that the State presented sufficient evidence that the victim was substantially impaired by her mental condition where the victim had an I.Q. of 64, and the victim was fourteen years old, but functioned at a third-grade level.

{¶32} With respect to Count 2 and Count 4, Appellant argues there was no evidence of overt force or threat of force.

{¶33} At trial, the State produced evidence that Appellant knew of E.M.'s impairment through the

16

testimony of Detective Clapp. Lorentino Brunetti, the school psychologist, testified E.M. had an IQ of forty-six and was functioning at a first- or second-grade level. Appellee also produced evidence through the testimony of E.M. that after E.M. and Appellant finished cleaning Appellant's garage, Appellant pulled a table in front of the door, trapping E.M. inside the garage. Appellant told E.M. to pull her pants down, and then proceeded to take E.M.'s jacket off. Next, Appellant did pull E.M.'s pants and leggings down, inserted his penis into her rectum, and two fingers into her vagina. E.M. felt if she struggled, pushed, kicked, or persisted she would get in trouble, as Appellant was getting mad at her. Andrea Storm then testified that E.M. had a rectal/anal tear visible to the naked eye, and had suffered blunt force trauma to the cervix. After the act, Appellant threatened E.M. he would do this again the next time he saw her.

{¶34} We find the State produced sufficient evidence, if believed by a jury, that Appellant knowingly engaged in sexual conduct with a person whose ability to resist or consent was impaired, and Appellant knew of the impairment, and that Appellant engaged in sexual conduct with another when Appellant purposely compelled the other person to submit by force or threat of force. Our review of the entire record fails to persuade us that the jury lost its way and created a manifest miscarriage of justice. Appellant was not convicted against the manifest weight of the evidence.

{¶35} Appellant's Second Assignment of Error is overruled.

*Moore*, 2021 WL 352018, at *4–5.

Moore complains that the Ohio court of appeals "never addressed [*Tibbs v. Florida*, 457 U.S. 31 (1982)], using a federal analysis." Doc. 6, at 15. In *Tibbs*, the Supreme Court explained the difference between a manifest weight claim

and a sufficiency of the evidence claim. 457 U.S. at 44–45. The *Tibbs* Court cited the sufficiency standard expressed in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Id.* at 45. That standard is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Here, the Ohio court of appeals recited, and applied, the *Jackson* sufficiency of the evidence standard. *Moore*, 2021 WL 352018, at *4–5 (citing *State v. Jenks*, 574 N.E.2d 492, 503 (Ohio 1991)[2] (in turn citing *Jackson*)). So to the extent that Moore alleges that the Ohio court of appeals didn't cite the relevant legal standard, his argument is belied by the record.

Moore submits that his conviction is not supported by sufficient evidence because there was "no evidence of overt force or the threat of force." Doc. 6, at 14. But the Ohio court of appeals disagreed, and Moore doesn't explain how its decision was unreasonable. *See Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) ("even were [the court] to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable."). Ground Two fails on the merits.

---

[2]     *Jenks* was superseded by statute and constitutional amendment on other grounds. *See, e.g., State v. Smith*, 684 N.E.2d 668, 684 n.4 (Ohio 1997).

1.    *A portion of Ground One is not cognizable and the remainder fails on the merits*

In Ground One, Moore argues that his due process rights were violated by improper jury instructions as to counts two and four about "authority figures applying psychological force for purposes of rape." Doc. 1, at 16–17. The Warden argues that Ground One is procedurally defaulted because Moore only presented this claim to the Ohio court of appeals as a state law claim, not a federal constitutional claim. Doc. 5, at 10–11. But Moore raised Ground One to the Ohio court of appeals as a state law claim *and* federal constitutional issue. *See* Doc. 5-1, at 27–28 (Moore's brief to the Ohio court of appeals arguing that the trial court's jury instruction was "of constitutional magnitude, impacting Moore's rights to due process and a fair trial" because "the instructional error … alters an element of the offence[.]"). Moore also raised Ground One in his brief to the Ohio Supreme Court as a federal constitutional issue. *Id*. at 68. So Moore fairly presented Ground One as a federal claim to the Ohio courts and it is not procedurally defaulted.

In his Petition, Moore alleges that the trial court abused its discretion when it instructed the jury on counts two and four. Doc. 1, at 18. Counts two and four charged Moore with "sexual conduct with another, when the offender purposely compels the other person to submit by force or threat of force, in violation of [Ohio Revised Code] § 2907.02 (A)(2)." Doc. 5-1, at 3. In his brief to the Ohio court of appeals, Moore asserted that the trial court, relying on *State*

*v. Eskridge*, 526 N.E.2d 304 (1988), and the Ohio Jury Instructions, erred when it included this jury instruction on counts two and four:

> "Force" means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing. When the relationship between the victim and the defendant is one of child and authority figure, the element of force need not be openly displayed or physically brutal. It can be subtle, slight, psychologically and emotionally powerful. Evidence of an expressed threat of harm or evidence of significant physical restraint is not required. If you find beyond a reasonable doubt that under the circumstances in evidence E.M.'s will was overcome by fear, duress, or intimidation, the element of force has been proved.

*Moore*, 2021 WL 352018, at * 2; Doc. 5-1, at 21–22. Moore argues that the trial court shouldn't have instructed the jury "that evidence of physical restraint is not required" when the victim is a 16-year-old minor, and that, while Moore is the victim's uncle, "they were not particularly close." Doc. 1, at 18–19. In his Traverse, Moore argues that the Ohio court of appeals failed to apply the harmless error standard in *Chapman v. California*, 386 U.S. 18 (1967). Doc. 6, at 10. He alleges, without further explanation, that "the ruling in this Case is so egregious that it resulted in a denial of fundamental fairness [and] violated Moore's due process." Doc. 6, at 13.

The Ohio court of appeals considered Moore's claim:

> {¶16} In Appellant's first Assignment of Error, Appellant argues the trial court abused its discretion when instructing the jury that evidence of physical restraint is not required when the victim is a minor of sixteen-years old, and the defendant is the victim's uncle, but they are not particularly

20

close. Appellant also argues this instruction was not harmless, as it probably misled the jury in a matter materially affecting the defendant's substantial rights. We disagree.

{¶17} It is unnecessary to address the appropriateness of the jury instruction given on Counts Two and Four, as Appellant was also found guilty on Counts on One and Three. Counts Two and Four merged into Counts One and Three respectively, and the trial court sentenced Appellant on Counts One and Three.

{¶18} It is well-established that juries are presumed to follow and obey the limiting instructions given them by the trial court. *State v. Davis*, 5th Dist. Richland No. 14 CA 34, 2015-Ohio-889, 31 N.E.3d 1204, ¶54, citing *State v. DeMastry*, 155 Ohio App.3d 110, 127, 799 N.E.2d 229, 2003-Ohio-5588, ¶84; *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991); *Zafiro v. United States*, 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). "A presumption always exists that the jury has followed the instructions given to it by the trial court." *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313 (1990), at paragraph four of the syllabus, *rehearing denied*, 54 Ohio St.3d 716, 562 N.E.2d 163.

{¶19} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Martens*, 90 Ohio App.3d 338, 620 N.E.2d (3rd Dist. 1993). In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988).

{¶20} Crim.R. 30(A) governs instructions and states:

21

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.

On appeal, a party may not assign as error the giving or failing to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

{¶21} In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) the United States Supreme Court held that because failing to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 applies to a failure to properly instruct the jury, for it does not necessarily render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. Crim.R. 52(A) defines harmless error as any "error, defect, irregularity, or variance which does not affect substantial rights."

{¶22} In the case sub judice, after giving the jury instructions for Count One and Count Three to the jury, the trial court judge specified, "In Count 2 and Count 4, Daniel Moore is charged with a second type of rape. He denies that he committed these crimes. I

will now instruct you on the law you need to evaluate these charges." The trial court appropriately bifurcated the first set of jury instructions from the jury instructions provided for Count 2 and Count 4. As such, we find the trial court did not abuse its discretion when providing the *Eskridge* jury instruction only for Counts 2 and 4.

{¶23} Appellant's First Assignment of Error is overruled.

*Moore*, 2021 WL 352018, at *2–4.

To the extent Moore argues that the trial court violated state law when it used jury instructions from *Eskridge* on counts two and four, that claim alleges a state law violation and is not cognizable. *See Engle v. Isaac*, 456 U.S. 107, 120–21 (1982) (allegation that the jury instructions at trial violated state law is not cognizable on federal habeas review).

To the extent Moor alleges a federal constitutional claim, and to the extent the Ohio court of appeals' decision assumed error and applied the harmless error rule in *Chapman*, Ground One fails on the merits. On federal habeas review, the court applies the standard announced in *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)—whether the alleged constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." To prevail, Moore must "persuad[e] [this] court that it alone should harbor 'grave doubt'—not absolute certainty—about whether the trial error affected the verdict's outcome." *Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022).

23

Here, Moore has not shown that this Court should have "grave doubt" whether the trial court's jury instructions on grounds two and four "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623. As the Ohio court of appeals explained,

> Appellee also produced evidence through the testimony of E.M. that after E.M. and Appellant finished cleaning Appellant's garage, Appellant pulled a table in front of the door, trapping E.M. inside the garage. Appellant told E.M. to pull her pants down, and then proceeded to take E.M.'s jacket off. Next, Appellant did pull E.M.'s pants and leggings down, inserted his penis into her rectum, and two fingers into her vagina. E.M. felt if she struggled, pushed, kicked, or persisted she would get in trouble, as Appellant was getting mad at her. Andrea Storm then testified that E.M. had a rectal/anal tear visible to the naked eye, and had suffered blunt force trauma to the cervix. After the act, Appellant threatened E.M. he would do this again the next time he saw her.

*Moore*, 2021 WL 352018, at *5. That describes evidence that Moore physically restrained E.M. And Moore's assertion that, while Moore is E.M's uncle, "they were not particularly close," Doc. 1, at 18–19, is a non-starter. *See, e.g., State v. Frazier*, No. 107680, 2019 WL 2880396, at *3 (Ohio Ct. App. July 3, 2019) (finding that, as to a conviction under Ohio Revised Code 2907.02(A)(2), "although A.F. did not have a close relationship with her uncle, he was still an adult relative who was 36 years old at the time of the assault" and, therefore, "held a position of authority over A.F."). Moore does not come close to persuading the Court that it "should harbor 'grave doubt'" that the trial court's

24

alleged improper jury instruction on counts two and four affected the verdict's outcome, *Brown*, 142 S. Ct. at 1525. Ground One fails on the merits.

**Conclusion**

For the reasons set forth above, I recommend that Moore's Petition be denied.

Dated: May 5, 2023

 */s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).